**Allen W. JOLLY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 84–5594.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 5, 1984.

Decided June 25, 1985.

Carleton Powell, Washington, D.C., for defendant-appellee.

Before ELY *, FLETCHER, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Allen Jolly appeals from the district court's dismissal of his suit for refund of a frivolous-return penalty assessed by the Internal Revenue Service (IRS) pursuant to Internal Revenue Code section 6702, 26 U.S.C. § 6702 (1982). We affirm.

## I.

## BACKGROUND

Jolly filed a Form 1040 for 1982 containing his name and address, but refused to supply his occupation, social security number, or any financial information. Instead, Jolly wrote on the form that he refused to supply the information on fifth amendment grounds.[1] The IRS assessed a $500 penalty against Jolly pursuant to section 6702, on the grounds that his return did not contain a self-assessment and reflected a position that was frivolous or designed to delay or impede the administration of the tax laws. *See* 26 U.S.C. § 6702(a); *see also Boomer v. United States,* 755 F.2d 696, 697 (8th Cir.1985) (per curiam); *Betz v. United States,* 753 F.2d 834, 835 (10th Cir. 1985) (per curiam); *Martinez v. IRS,* 744 F.2d 71, 72 (10th Cir.1984) (per curiam). Jolly paid 15 percent of the penalty, or $75, as required by statute, and filed a refund claim. *See* 26 U.S.C. § 6703(c) (1982). When the IRS disallowed his claim, Jolly filed this refund action. The district court ultimately dismissed Jolly's action, and he timely appealed.

Jolly raises three contentions on appeal: (1) that the Form 1040 he filed was not

Allen W. Jolly, pro se.

---

* Before his untimely death on October 9, 1984, Judge Ely fully participated in the argument, the post-argument conference of the panel, and the decision of this case.

1. Jolly also asserted first, fourth, seventh, eighth, tenth, and fourteenth amendment objections. On appeal, Jolly asserts only fifth amendment objections.

"frivolous" under § 6702, because he validly withheld his personal and financial information based upon his fifth amendment privilege against self-incrimination; (2) that section 6702 is unconstitutional, because it was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), which, Jolly claims, Congress passed in violation of the origination clause of the Constitution, U.S.Const. art. I, § 7, cl. 1; and (3) that section 6703's requirement that taxpayers must pay 15 percent of their frivolous-return penalties before they are entitled to administrative and judicial review violates due process.[2] We find all these claims to be without merit.

## II.

### FRIVOLOUSNESS OF JOLLY'S RETURN

■ Under section 6702, " '[t]he test for frivolousness is purely an objective one, under which we must evaluate the taxpayer's position in terms of its legal underpinnings.' " *Jenney v. United States*, 755 F.2d 1384, 1387 (9th Cir.1985) (quoting *Kahn v. United States*, 753 F.2d 1208, 1214 (3d Cir.1985) ). Jolly's position is that he is entitled to withhold all personal and financial information from the IRS based upon a blanket assertion of his fifth amendment rights.

The Supreme Court has ruled that raising a self-incrimination claim "against every question on the tax return" would be "virtually frivolous." *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). Moreover, this court has held that a taxpayer may claim the fifth amendment privilege only when he faces "substantial

hazards of self-incrimination that are real and appreciable, and [he has] reasonable cause to apprehend such danger." *Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir.1982); *accord, Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). Since Jolly asserted his fifth amendment privilege to virtually every question on his tax form, and since he offered no specific basis or evidence indicating his reasons for doing so, we conclude, consistent with other courts, that his blanket assertion of his fifth amendment privilege was "frivolous" under section 6702. *See Paulson v. United States*, 758 F.2d 61, 62 (2d Cir.1985) (per curiam); *Boomer v. United States*, 755 F.2d 696, 697 (8th Cir.1985) (per curiam); *Betz v. United States*, 753 F.2d 834, 835 (10th Cir.1985) (per curiam); *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir.1985) (per curiam); *Brennan v. Commissioner*, 752 F.2d 187, 189 (6th Cir.1984) (per curiam); *Heitman v. United States*, 753 F.2d 33, 34–35 (6th Cir.1984) (per curiam); *Davis v. United States Government*, 742 F.2d 171, 172 (5th Cir.1984) (per curiam); *Martinez v. IRS*, 744 F.2d 71, 72 (10th Cir.1984) (per curiam); *Baskin v. United States*, 738 F.2d 975, 977 (8th Cir. 1984) (per curiam).

## III.

### ORIGINATION CLAUSE

■ Jolly's contention that section 6702 is invalid, because Congress enacted TEFRA in violation of the origination clause of the Constitution, is without merit in light of this court's decisions in *Armstrong v. United States*, 759 F.2d 1378, 1380–82 (9th

---

2. In his complaint in district court, Jolly also maintained that section 6702 is unconstitutionally vague. Although he has not specifically raised this claim on appeal, we note in passing that his responses on his tax form were clearly proscribed under section 6702, and therefore, he has no standing to raise a vagueness claim. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Welch v. United States*, 750 F.2d 1101, 1111–12 (1st Cir.1985).

Moreover, a number of courts have already rejected claims that section 6702 is unconstitutionally vague. *See, e.g., Boomer v. United States*, 755 F.2d 696, 697 (8th Cir.1985) (per curiam); *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir.1985) (per curiam); *Welch*, 750 F.2d at 1112; *Brennan v. Commissioner*, 752 F.2d 187, 189 (6th Cir.1984) (per curiam); *Rowe v. Commissioner*, 583 F.Supp. 1516, 1520 (D.Del.), *aff'd mem.* 749 F.2d 27 (3d Cir.1984).

Cir.1985), *Harris v. United States Internal Revenue Service,* 758 F.2d 456, 458 (9th Cir.1985), and *Boday v. United States,* 759 F.2d 1472, 1476 (9th Cir.1985). *Accord Wardell v. United States,* 757 F.2d 203, 205 (8th Cir.1985) (per curiam); *Heitman,* 753 F.2d at 35; *Rowe,* 583 F.Supp. at 1520; *see also Flint v. Stone Tracy Co.,* 220 U.S. 107, 143, 31 S.Ct. 342, 346, 55 L.Ed. 389 (1911).

## IV.

## DUE PROCESS

Jolly also contends that his due process rights were violated because he was required under section 6703(c) to pay $75 of his $500 frivolous-return penalty before he was entitled to file a refund claim with the IRS and then obtain judicial review. He does not claim that the administrative and judicial review provided under section 6703 are deficient, but maintains only that he was entitled to receive this review *prior* to paying any portion of the $500 penalty assessed against him. A number of courts, including this circuit, have already flatly rejected similar procedural due process challenges to section 6703. *See, e.g., Boday,* 759 F.2d at 1475; *Anderson v. United States,* 754 F.2d 1270, 1272 (5th Cir.1985) (per curiam); *Borgeson,* 757 F.2d at 1073; *Heitman,* 753 F.2d at 35; *Martinez,* 744 F.2d at 72–73; *Baskin,* 738 F.2d at 977.

■ The Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), suggests that because Jolly contends that he is entitled to *pre-deprivation,* rather than *post-deprivation,* process, we must examine his claim in light of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at

903; *see Kahn v. United States,* 753 F.2d 1208, 1219–20 & n. 6 (3d Cir.1985) (holding that *Eldridge*'s three-part test must be applied in evaluating procedural due process challenges to section 6703). If the individual bringing a procedural due process challenge demonstrates "a likelihood of irreparable harm resulting from the lack of a pre-deprivation hearing," it is unlikely that the government will be able to demonstrate any public interest that will overcome the individual's interest, and some additional form of pre-deprivation process will probably be required. *Kahn,* 753 F.2d at 1219. In the absence of such a showing, however, *Eldridge* requires courts to "balance the governmental interest in [retaining] the existing process against the private interest that will be affected and the probability of erroneous deprivation associated with that process." *Id.* at 1219–1220.

■ Applying the *Eldridge* test to Jolly's claim, we conclude that the application of section 6703 did not violate his right to procedural due process. Jolly has not asserted or demonstrated that being required to pay $75 of his penalty before filing his refund claim or receiving judicial review caused him irreparable injury. Therefore, we proceed to balance the three *Eldridge* factors. *Id.* at 1220–21.

First, the "private interest" of Jolly's "affected by" section 6703 includes the court filing fee and the other costs associated with bringing this action, the lost use of the $75 he was required to pay the IRS before challenging his frivolous-return penalty, and the time and effort he expended in filing his refund claim and initiating this action. *See id.* at 1221 & n. 7. Since Jolly has not demonstrated that he suffered any financial or other hardship from being required to comply with section 6703's procedures, we conclude that his private interest is noteworthy, but not that substantial.

Second, the "risk of an erroneous deprivation" when the IRS assesses a frivolous-return penalty appears to be quite small. *Id.* at 1221. The IRS is required to determine only whether the taxpayer's self-assessment is "substantially incorrect" and

reflects a position that is frivolous. 26 U.S.C. § 6702. This inquiry is "sharply focused and easily documented," since "[t]he return speaks for itself"; it usually does not require any determinations of credibility of witnesses or claims, and would not be aided in most cases by a face-to-face meeting with the taxpayer before a penalty is assessed. *Kahn*, 753 F.2d at 1221. Thus, "[t]he possibility of erroneous deprivation ... is not a reason for requiring more process" under section 6703. *Id.*

Finally, the government's interest in retaining the existing procedures under section 6703 is substantial. The government obviously "has a powerful interest in the prompt collection of revenue," *Ueckert v. United States*, 581 F.Supp. 1262, 1265 (D.N.D.1984); *see also Fuentes v. Shevin*, 407 U.S. 67, 90–92 & n. 24, 92 S.Ct. 1983, 1999–2000 & n. 24, 32 L.Ed.2d 556 (1972) (citing *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931) ); this could be jeopardized if full-scale pre-deprivation hearings and court cases are required whenever the government attempts to collect a frivolous-return penalty. *See Kahn*, 753 F.2d at 1222.

The legislative history of sections 6702 and 6703 indicates that Congress instituted frivolous-return penalties in order to improve compliance with the tax laws and to respond to the "rapid growth in deliberate defiance of the tax laws by tax protestors." S.Rep. No. 494, 97th Cong., 2d Sess. 74, 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1023–25. The Senate Finance Committee report indicates that:

> [t]he committee is concerned with the rapid growth in deliberate defiance of the tax laws by tax protestors. The Internal Revenue Service had 13,600 illegal protest returns under examination as of June 30, 1981. Many of these protestors are induced to file protest returns through the criminal conduct of others. These advisors frequently emphasize the lack of any penalty when sufficient tax has been withheld from wages and en-

courage others to play the "audit lottery." The committee believes that an immediately assessable penalty on the filing of protest returns will help deter the filing of such returns, and will demonstrate the determination of the Congress to maintain the integrity of the income tax system.

*Id.* The Committee noted that under existing law, taxpayers filing protest or frivolous returns were already subject to a number of civil penalties, but concluded that "limitations in the amounts of such penalties, as well as the delays in their imposition, had rendered those penalties ineffective as deterrents to the filing of tax protest returns." *Welch*, 750 F.2d at 1105; *see* S.Rep. No. 494, at 277, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 1023–24; *see also Kahn*, 753 F.2d at 1218.

In light of the government's powerful interest in collecting revenue, maintaining the integrity of the revenue system, and discouraging frivolous claims, and in light of Congress's express conclusion that there was a need for additional frivolous-return penalties that could be assessed without any delay against individuals filing protest or frivolous returns, we conclude that the government has a strong interest in maintaining the procedures of section 6703 as they currently stand. We join with the Third Circuit in concluding that this government interest outweighs the individual taxpayer's interest in receiving a pre-deprivation hearing concerning a frivolous-return penalty assessed against him. *See Kahn*, 753 F.2d at 1222.

We also note, although it is not directly relevant to our *Eldridge* calculus, that while taxpayers are not permitted to challenge frivolous-return penalties in the Tax Court prior to making payment, *see* 26 U.S.C. § 6703(b), in two significant respects, section 6703 accords them greater procedural protection than they receive when other taxes or penalties are assessed. Under section 6703, (1) taxpayers receive both administrative review and review in district court before an Article III judge upon the payment of *only 15 percent* of

the total amount assessed, as opposed to the 100 percent required to bring other refund actions in district court; and (2) the burden or proof in the courts is on the government, as opposed to the taxpayer himself. *See* 26 U.S.C. § 6703(a); *Kahn,* 753 F.2d at 1221. These added procedural protections guarantee that taxpayers will receive adequate post-deprivation process in frivolous-return cases, and reflect the concessions that Congress was willing to make in order to establish an immediately assessible penalty to combat protest returns.

For all these reasons, we conclude that Jolly's due process rights were not violated by the failure to provide him with a predeprivation hearing or judicial review.

AFFIRMED.