793 F.2d 1292
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ANNE K. McNALLY Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 85-3492
 United States Court of Appeals, Sixth Circuit.
 5/28/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: LIVELY, Chief Judge; WELLFORD and NELSON, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiff and taxpayer Anne K. McNally appeals from a final order of the district court granting summary judgment to the defendant United States in an action brought pursuant to 26 U.S.C. Sec. 6703 to challenge a $500 'frivolous return' penalty assessed by the Internal Revenue Service (IRS) under 26 U.S.C. Sec. 6702 for striking the jurat from her federal income tax return for 1982. Taxpayer brought this suit seeking a refund of the $75 she paid to the IRS as partial payment on the assessment made pursuant to 26 U.S.C. Sec. 6702. On cross-motions for summary judgment, the district court denied taxpayer's motion for partial summary judgment and granted the government's motion for summary judgment.
 
 
 2
 Taxpayer filed a federal income tax return (Form 1040A) for 1982, seeking a refund of $1.[1] Taxpayer did not, however, sign the return under penalty of perjury as required by the pertinent provisions of the Internal Revenue Code and the Treasury Regulations issued thereunder. Although the return was signed, taxpayer lined through the jurat printed on the Form 1040A above the signature block. The jurat reads:
 
 
 3
 I have read this return and any attachments filed with it. Under penalties of perjury, I declare that to the best of my knowledge and belief, the return and attachments are correct and complete.
 
 
 4
 Taxpayer also lined through that portion of the opening section of the Form 1040A dealing with the election to contribute to the presidential election campaign fund and added a note on page two of the form, asking '[w]hat % of income in taxes is Reagan's constituency actually paying?' Shortly after filing her 1982 tax return, taxpayer received a refund check. On March 28, 1984, taxpayer filed her 1983 tax return.
 
 
 5
 On April 9, 1984, the IRS assessed at $500 penalty against taxpayer pursuant to 26 U.S.C. Sec. 6702. The 'Statement of Tax Due,' explained that she had been 'assessed a penalty under section 6702 of the Internal Revenue Code for filing a frivolous tax return,' and apprised her of the procedural steps necessary to contest the assessment. The notice, however, failed to state the tax year for which the penalty had been imposed or the specific grounds for the penalty. Taxpayer subsequently made several written requests for copies of her returns for the tax years 1981, 1982, and 1983, but the IRS indicated that it was unable at the time promptly to supply copies of her returns. On May 4, 1984, without any further specific inquiry concerning the penalty, taxpayer paid 15 percent of the penalty and filed a claim for refund with the IRS pursuant to 26 U.S.C. Sec. 6703, requesting a hearing and complaining that the statement of tax due did not specify the grounds for the penalty or the tax year to which it applied. In any event, McNally claimed that the penalty was applied improperly and violated her rights to free speech, due process, and equal protection. In its June 26, 1984, letter denying her claim without a hearing, the IRS stated that the assessment of the frivolous return penalty applied to taxpayer's 1982 return and that it was based on the striking of the jurat on that return.
 
 
 6
 Taxpayer then filed a complaint, seeking a refund. The government filed a motion to dismiss, or in the alternative for summary judgment, in response. Plaintiff pointed out that, for many years, she has written critical notes in the margins of her tax returns complaining about the tax structure or government policies. She asserts that she has attached letters, poems, and newspaper clippings to her returns. Her tax returns, however, have indicated her income, exemptions, deductions, and total tax liability. She claims that she has frequently crossed out the jurat before signing and dating her return, and that the IRS always processed her returns. She asserts that IRS has never informed her that she may not lawfully strike the jurat.
 
 
 7
 Plaintiff contends on appeal that 26 U.S.C. Sec. 6702 does not apply to her conduct in striking the jurat from her 1982 return. Under Sec. 6702,[2] the IRS may impose a $500 penalty on any individual who files 'what purports to be' a tax return which (1) 'does not contain information on which the substantial correctness of the self-assessment may be judged' (2) 'due to . . . a position which is frivolous.' Other provisions of the tax code indicate that a taxpayer is prohibited from altering a jurat on a return. See 26 U.S.C. Secs. 6061 and 6065. Section 6061 provides that 'any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary.' Similarly, section 6065 provides that 'any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that is made under the penalties of perjury.'
 
 
 8
 We agree with the district court's conclusion that plaintiff's conduct falls directly within the prohibitions of the statute. First, by striking the jurat, the plaintiff refused to certify that the entries on the form were correct, as required by statute. Without this certification the IRS could not properly process the return or assess the substantial correctness of her self-assessment. Second, the plaintiff struck the jurat 'due to . . . a position that is frivolous,' because the requirements of verification or a certification under penalty of perjury on returns and documents filed with the IRS has been expressly upheld by the Supreme Court. See Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934); Lucas v. Pilliod Lumber Co., 281 U.S. 245 (1930). There is simply no legal foundation for plaintiff's action in striking the jurat.
 
 
 9
 Plaintiff argues that her conduct does not come within the purview of Sec. 6702 because her striking of the jurat simply was not 'due to . . . a position.' Plaintiff has alleged no cause or justification for her striking of the jurat. Filing of a tax return requires an assertion that it is correctly and properly completed in accordance with law. The district court did not err in concluding that the plaintiff raised no genuine issue of fact and that as a matter of law her conduct was due to a frivolous position that the jurat was unnecessary to filing the required lawful return.
 
 
 10
 In a recent unpublished opinion, this court has clearly held that the filing of an unverified return falls within the scope of Sec. 6702. Taratuta v. United States, No. 84-1654, slip op. at 2-3 (6th Cir. Mar. 14, 1986). Every other court faced with the same question has ruled that Sec. 6702 applies to the filing of a return with a stricken jurat. See, e.g., Mosher v. IRS, 775 F.2d 1292, 1294-95 (5th Cir. 1985), cert. denied, ---- S.Ct. ----, No. 85-1552 (April 21, 1986); Borgeson v. United States, 757 F.2d 1071, 1073 (10th Cir. 1985); Green v. United States, 593 F. Supp. 1341, 1343-44 (N.D. Ind. 1984).
 
 
 11
 Plaintiff next argues that she was denied due process by the failure of the notice sent by the IRS on April 9, 1984, to indicate the specific basis and the relevant tax year for which the IRS had imposed a penalty.[3] Plaintiff essentially argues that she was without sufficient information to address the merits of the assessment at the administrative stage. As the district court noted, the procedures provided under 26 U.S.C. Sec. 6703 for review of a Sec. 6702 penalty assessment have been uniformly upheld as constitutional, despite the failure to provide for a pre-deprivation hearing. Brennan v. Commissioner, 752 F.2d 187, 189 (6th Cir. 1985); Heitman v. Commissioner, 753 F.2d 33, 35 (6th Cir. 1985); Jolly v. United States, 764 F.2d 642, 645-47 (9th Cir. 1985); Borgeson v. United States, 757 F.2d 1071, 1073 (10th Cir. 1985); Martinez v. United States, 744 F.2d 71, 72-73 (10th Cir. 1984); Anderson v. United States, 754 F.2d 1270, 1272 (5th Cir. 1985); Kahn v. United States, 753 F.2d 1208, 1217-22 (5th Cir. 1985); Baskin v. United States, 738 F.2d 975, 977 (8th Cir. 1984).
 
 
 12
 Under other circumstances not present here, the failure of IRS to provide a taxpayer with such basic information as the tax year involved or the specific factual basis for the imposition of a penalty under Sec. 6702 might deprive a taxpayer of due process. On the facts of this case, we find that the requirements of due process were satisfied. We note particularly that the plaintiff taxpayer made no request of the IRS for further specific information regarding the specific tax year at issue or the specific basis of the penalty, and that the provisions of Sec. 6703 provided plaintiff with a prompt post-deprivation opportunity fully and fairly to litigate the merits of the assessment with full knowledge of the basis for the penalty. Taxpayer knew that Sec. 6702 had only become effective during 1982 and may be presumed to have known that she had struck the jurat on each return she had filed since the effective date (i.e., her 1982 and 1983 returns).
 
 
 13
 Plaintiff also argues that the district court erred in dismissing her claim of selective enforcement based on 'her history of First Amendment activity in connection with her tax returns.' Plaintiff presents two related claims, as did the defendant in Wayte v. United States, 105 S. Ct. 1524 (1985). First, plaintiff presents a first amendment claim: The IRS, plaintiff claims, unconstitutionally imposed a penalty on plaintiff because of her history of opposition to the taxing system (e.g., political comments on tax returns). See, e.g., Wayte, 105 S. Ct. at 1532-34. Second, plaintiff presents an equal protection claim of selective prosecution: The IRS, plaintiff alleges, treated her return 'differently from those of similarly situated taxpayers and that this special treatment was based on an impermissible ground.' See, e.g., Wayte, 105 S. Ct. at 1531-32. We hold that plaintiff did not present sufficient allegations to survive a summary judgment m tion on either claim.
 
 
 14
 In Wayte, the government's 'passive enforcement policy' under the draft registration law clearly linked prosecution to first amendment activity: Only certain 'vocal' nonregistrants (i.e., eligible young men who reported themselves as having violated the law) were to be prosecuted. Id. at 1527-29. Here, the statutory provision imposing a penalty does not link the penalty to first amendment activity. Plaintiff has pointed to no evidence, moreover, that the IRS has a policy penalizing under Sec. 6702 those who engage in first amendment activity rather than those who merely file frivolous returns. See Fink v. United States, 84-2 U.S. Tax Cas. (CCH) p9722 (D. N.H. 1984) (no first amendment violation by application of Sec. 6702 to return). Plaintiff's complaint, furthermore, does not adequately plead a first amendment claim.
 
 
 15
 The equal protection aspect of the selective prosecution claim similarly must fail. Under Wayte, the equal protection standards applicable to selective prosecution claims require that plaintiff show both (1) that the challenged conduct had a discriminatory effect and (2) that it was motivated by a discriminatory purpose. Wayte, 105 S. Ct. at 15, 31-32. Plaintiff presented no evidence whatever that the IRS did not impose penalties on other taxpayers similarly situated during the same period in time who either struck the jurat or otherwise filed a frivolous return. There was no evidence of discriminatory intent on the part of the IRS.
 
 
 16
 Having considered each of the grounds asserted for setting aside the contested penalty and having found them without merit as a matter of law, we affirm the decision of the district court.
 
 
 17
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 18
 Although I agree with much of the court's analysis, I am not persuaded that the government has sustained its statutory burden of proving that this particular taxpayer's conduct was 'due to a frivolous position.'
 
 
 19
 Absent a self-evident desire on the part of the taxpayer to delay or impede the administration of the tax laws, conduct that comes within 26 U.S.C. Sec. 6702(a)(1)--which this taxpayer's conduct did, in my opinion--is punishable, under the statute, if any only if the conduct 'is due to . . . a position which is frivolous.' 26 U.S.C. Sec. 6702(a)(2). '[T]he burden of proof with respect to such issue shall be on the Secretary.' 26 U.S.C. Sec. 6703(a).
 
 
 20
 In Taratuta v. United States, No. 84-1654 (6th Cir., March 14, 1986), where this court affirmed the imposition of a penalty on taxpayers who had obliterated the words 'under penalty of perjury' in the jurat of their return, the plaintiffs 'stated that they obliterated the portion of the jurat as a political statement and as an exercise of their free speech guaranteed by the first amendment of the federal constitution.' Slip Op. at 2. The taxpayers' conduct in Taratuta was thus unquestionably the result of a frivolous position: a tax return is neither a ballot nor a soap box, and an individual who says that he relies on the First Amendment as a basis for circumventing his statutory obligation to verify his return brings himself squarely within the language of 26 U.S.C. Sec. 6702(a)(2).
 
 
 21
 The taxpayer in the case at bar seems to have been in the habit of favoring the clerks who processed her tax returns with animadversions that might better have been directed to those responsible for making the tax laws rather than those responsible for administering them. The Internal Revenue Service has recognized, however, that '[i]t was not the intent of Congress to penalize anyone for simply making comments or questioning the taxation system,'[4] and it does not seem to me that the government has established conclusively that this taxpayer struck the jurat on her 1982 return because of a desire to make a political statement or a position that the jurat was unnecessary. The record indicates that the Internal Revenue Service was remiss in having failed to send the taxpayer a refund for the prior year, and the signed note with which she replaced the jurat suggests on its face that the taxpayer wanted to get the attention of the IRS and get credit for her overpayment. Anyone who has ever tried to reason with a computer knows the frustration inherent in the struggle between man and machine, and knows that sometimes only strong measures seem to get results.
 
 
 22
 A simple means of determining whether the taxpayer's conduct in striking the jurat was or was not due to a frivolous position would have been for the IRS to send the taxpayer a letter explaining that the return could not be processed if not properly verified and giving her another opportunity to sign a jurat. That was the procedure followed in both Mosher v. I.R.S., 775, F.2d 1292 (5th Cir. 1985), and Borgeson v. United States, 757 F.2d 1071 (10th Cir. 1985), and it is the procedure that must now be followed 'in all altered or striken jurat cases where the penalty is being considered.' IRM Sec. 4293.7(5) (June 11, 1985). (Emphasis supplied.)
 
 
 23
 Had that procedure been followed in the case at bar, and had the taxpayer still refused to verify her return, I would have had no difficulty in concluding that as a matter of law her conduct was due to a frivolous position. That is not what happened, however, and I am therefore constrained to dissent.
 
 
 
 [1]
 The return properly set forth the taxpayer's taxable income $13,128.25), her total tax ($1,899.00), and the amount withheld from her pay ($1,873.97). Thus, taxpayer admitted a tax liability for 1982 of $25.03. On line 22 of the form, however, which instructs the taxpayer to '[e]nter the amount you owe,' the taxpayer wrote 'see note.' In the box immediately following, which contained a printed jurat, she crossed out the jurat and wrote this note: '(1) You owe me $26.00 from 1981. You didn't send my refund. (2) Now you owe me only $1.00.+ Please send it. Anne McNally 3-4-82.'
 
 
 [2]
 Section 6702 (effective September 3, 1982) provides:
 (a) Civil penalty.--If--
 (1) any individual files what purports to be a return of the tax imposed by subtitle A but which--
 (A) does not contain information on which the substantial correctness of the self-assessment may be judged, or
 (B) contains information that on its face indicates that the self-assessment is substantially incorrect; and
 (2) the conduct referred to in paragraph (1) is due to--
 (A) a position which is frivolous, or
 (B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,
 then such individual shall pay a penalty of $500.
 (b) Penalty in addition to other penalties. The penalty imposed by subsection (a) shall be in addition to any other penalty provided by law.
 
 
 [3]
 Section 6702 was enacted and effective on September 3, 1982. In 1984, the IRS established a policy under which a taxpayer who filed a return with a stricken or altered jurat is afforded an opportunity to avoid the imposition of a penalty under Sec. 6702 by means of an amended return or an appropriate sworn declaration. See Internal Revenue Service Manual, Part IV-Audit and Investigation, Sec. 4293.7(5) (June 11, 1985). This latter policy was not in effect when the penalty at issue in this case was assessed against the taxpayer. (The taxpayer in this case was given such an opportunity with respect to the stricken jurat on her 1983 return, which is not at issue in this case.)4 Internal Revenue Service Audit Manual Sec. 4293.7(4) (June 11, 1985)