**Herbert O.J. ENGH and Carol M. Engh, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 86C6376.**

United States District Court, N.D. Illinois, E.D.

April 20, 1987.

---

Andrew B. Spiegel, Chicago, Ill., for plaintiffs.

Jeffrey N. Kaplan, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Herbert and Carol Engh ("Enghs") have sued the United States ("Government") under 26 U.S.C. § 7422,[1] seeking a refund of federal income tax deficiencies, interest and penalties assessed by and paid to the Internal Revenue Service ("IRS") for calendar years 1979 (Count I), 1980 (Count II) and 1982 (Count III).[2] Government has moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment on Counts I and III, together with costs, attorneys' fees and other sanctions under Rule 11. For the reasons stated in this memorandum opinion and order, Government's motion is granted in its entirety.

### Facts [3]

*Count I: 1979 Tax Year*

IRS claimed a $9,476 deficiency in Enghs' 1979 federal income taxes. Enghs elected to challenge that deficiency before the United States Tax Court (the "Tax Court") (DX B). On July 22, 1983 Special Trial Judge Francis Cantrel dismissed

---

1. All further references to Internal Revenue Code ("Code") provisions will take the form "Section—," using the Title 26 numbering.

2. Section 7422(f) requires tax refund actions to be brought against the United States and not IRS.

3. Rule 56 imposes on Government the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Initially both parties disregarded their Rule 56(e) obligations, tendering the documents on which they relied without putting them into a form admissible in evidence. In response to this Court's directive, that deficiency has been cured. It is true that Enghs' counsel points to

Government's asserted continued noncompliance with this District Court's General Rule 12(e), which requires identification of the material facts not in dispute. Under the circumstances of this uncontroverted and uncomplicated fact case, however, there seems no need to send Government back to the drawing board again. Accordingly this opinion proceeds under the customary Rule 56 procedures: This recitation of facts is drawn from both parties' submissions, with all reasonable inferences drawn most favorably to Enghs (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987)). Enghs' and Government's exhibits will be cited "PX—" and "DX—," respectively.

Enghs' petition for failing to state a claim upon which relief could be granted (DX C), thus upholding the deficiency assessment. Tax Court Chief Judge Howard Dawson adopted that order five days later (DX D) and entered an order dismissing Enghs' petition. Enghs later paid the $9,476 deficiency plus $6,712.87 in interest and penalties (see DX F). They now seek a refund of the entire amount ($16,188.87) plus interest, making essentially the same allegations of error against IRS that were already rejected by the Tax Court.

*Count III: 1982 Tax Year*

In 1984 IRS imposed a $500 penalty on Enghs under Section 6682(a) for filing a false W4 Form in 1982 (DX G).[4] In 1985 IRS collected that penalty plus $88.57 in interest by levying on Enghs' wages. On March 11, 1985 Enghs filed a Tax Court petition challenging unrelated deficiencies assessed by IRS for 1982. Enghs claim Section 6213 barred IRS from assessing and collecting the $588.57 penalty while that petition was pending. Enghs also argue Section 6682 is unconstitutional.

*Count I*

■ Government contends Section 6512 bars this Court from considering Enghs' claim for a partial refund of 1979 taxes because of Enghs' Tax Court petition for that year. Section 6512(a) reads in pertinent part:

(a) Effect of petition to Tax Court.—If the Secretary has mailed to the taxpayer a notice of deficiency under Section 6212(a) (relating to deficiencies of income, estate, gift, and certain excise taxes) and if the taxpayer files a petition with the Tax Court within the period prescribed in Section 6213(a), no credit or refund of income tax for the same taxable year ... in respect of which the secretary has determined the deficiency

shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except—

(1) As to overpayments determined by a decision of the Tax Court which has become final; and

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final; and

(3) As to any amount collected after the period of limitation upon the making of levy or beginning a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive; and

(4) As to overpayments attributable to partnership items, in accordance with subchapter C of Chapter 63.

Because Enghs filed a Tax Court petition for 1979 as to the very deficiency they make the subject of Count I here, Section 6512 on its face bars Count I unless one of the four quoted exceptions applies. *Dorl v. Commissioner of Internal Revenue*, 507 F.2d 406, 407 (2d Cir.1974) (per curiam).

Although Enghs' memorandum does not expressly say so,[5] they must look (if anywhere) to Section 6512(a)(2) for that purpose. They argue although Section 6512(a) may bar them from seeking a refund for the $9,476 deficiency upheld by the Tax Court, that Section does not foreclose an attempted recovery of the $6,712.87 in interest and penalties on that amount.

■ But Section 6512(a)(2) would allow suit only for "any amount collected in excess of an amount computed in accordance with the decision of the Tax Court...."

---

**4.** Enghs' counsel pounces on Government's Answer to the Complaint, disclaiming knowledge as to the Section under which the $500 was imposed, on the theory that somehow creates a material issue of fact barring summary judgment on Count III. Counsel's argument conveniently ignores DX G, which lists the penalty as a "W–4 Civil Penalty." Any potential factual

dispute has thus been resolved, and counsel cannot recreate a dispute just by pointing to the initial pleading.

**5.** Indeed, Enghs' counsel inexplicably makes no reference at all to the Section 6512(a) exceptions.

And Enghs do not (and cannot) assert the interest and penalties imposed on their properly assessed deficiency were not "computed in accordance with the decision of the Tax Court." Their sole basis for challenging the interest and penalties is their argument against the underlying deficiency itself.[6] Section 6512(a) expressly prohibits that second bite at the same apple.

*Britton v. United States*, 532 F.Supp. 275 (D.Vt.1981), *aff'd*, 697 F.2d 288 (2d Cir.1982) allowed a taxpayer to challenge the assessment of interest on a deficiency even though that taxpayer had already filed a Tax Court petition attacking the underlying deficiency. But in *Britton* the taxpayer's challenge was to the propriety of assessment of the interest itself, an issue over which the Tax Court had no jurisdiciton, and not to the validity of the underlying deficiency (532 F.Supp. at 277). Thus *Britton* offers no support at all for Enghs' position.

Enghs also point to *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) in support of their attempt to avoid Section 6512(a). According to Enghs, *Montana*, 440 U.S. at 153–55, 99 S.Ct. at 973–75 prevents Section 6512(a) from barring Count I because the issues presented in that count have never been determined by a court of competent jurisdiction. At a minimum, Enghs argue, *Montana* requires they be allowed to challenge the interest portion of their deficiency over which the Tax Court has no jurisdiction.

Those arguments fail for at least two reasons. First, *Montana* addressed only the requirements for applying collateral estoppel and res judicata. Government is not relying on those doctrines to bar Count I. Section 6512(a), which Government does rely on, makes the very *filing* of a petition before the Tax Court a bar to subsequent litigation, and *Montana* has no effect on that statutory bar. Second, the Tax Court's lack of jurisdiction over the interest portion of Enghs' deficiency is really irrelevant. Enghs are not challenging the assessment of that interest as a matter independent of the deficiency itself. In Count I Enghs challenge only the validity of the underlying deficiency—an issue the Tax Court has already addressed.

Enghs make two additional futile—and frivolous—arguments to avoid Section 6512(a). Neither deserves extended discussion.

■ First, Enghs claim IRS has, since the Tax Court's decision, changed its position as to the validity of Enghs' deficiency (treating other investors in the same partnership differently). Even if it were assumed arguendo such a change in position would entitle Enghs to a refund,[7] Enghs have offered no evidence of the alleged change in position. Under Rule 56(e) their bare unsupported assertion is insufficient to create a genuine issue of material fact.[8] Second, Enghs point to Section 7804(b), which prevents other Code sections from impairing their right to a jury trial. But Enghs themselves, rather than Section 6512(a), "impaired" their right to a jury trial. When Enghs received their deficiency notice from the IRS, they had the familiar option of either (1) going to the Tax Court to challenge that deficiency under Section 6213(a) or (2) paying the deficiency and suing for a refund in a federal district court under Section 7422. Enghs' choice of

---

6. In fact Complaint ¶¶ 4, 8 and 9 specifically ask for refund of the actual deficiency *and* the interest on that amount because *the deficiency* was erroneous. Enghs' shift in position in their brief memorandum (limiting their claim to the interest and penalty) cannot obscure their hopelessly flawed legal position.

7. *Holzer v. United States*, 250 F.Supp. 875 (D.Wis.1966), *aff'd*, 367 F.2d 822 (7th Cir.1966) rejected an exception to the Section 6512(a) bar for events occurring after a Tax Court decision.

8. Government is not required to refute such a general assertion—it was Enghs' burden to support it with competent evidence. *Celotex*, 106 S.Ct. at 2553. They did not buttress their unsupported assertion even in the supplemental submissions invited by this Court (see n. 3). Instead they simply refer (impermissibly under Rule 56(e)) to their Complaint *allegations*. Their failure to comply with the clear dictates of Rule 56(e) and this Court's directive calls into question their good faith in making the allegation.

the first option waived their right to a jury trial as to their 1979 deficiency.[9] Section 7804(b), part of the same Code that gives Enghs the alternate routes, does not protect them from the consequences of their own free choice.

### Count III

■ Both arguments made by Enghs challenging their $588.57 penalty under Section 6682 are likewise frivolous. Both the language of Section 6213 and the documents presented by Government, all of which were or should have been examined by Enghs' counsel before filing suit, clearly establish 6213 did not prevent IRS from assessing and collecting the penalty. And as for Enghs' constitutional onslaught on Section 6682, the identical contention has been summarily rejected by one court, and other courts have repeatedly rebuffed as frivolous similar attacks on a parallel Code section.

Section 6213(a) provides in pertinent part:

Time for filing petition and restriction on assessment.—Within 90 days ... after the notice of deficiency authorized in Section 6212 is mailed ... the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency.... [N]o assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44 or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer ... nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

It is true that Enghs have filed a Tax Court petition disputing a deficiency assessed against them for 1982 (DX E). It is also true that the $588.57 penalty under Section 6682 was imposed because of a false W4

filed by Enghs for that same year and was collected after the Tax Court petition was filed (DXs G and H).

But two crystal-clear Code provisions put those facts into the "so what?" category:

1. Section 6682(c) specifically makes Tax Court deficiency procedures inapplicable to Section 6682 penalties.[10]

2. Section 6213(a) applies only to the assessment and collection of taxes imposed under "subtitle A or B, chapter 41, 42, 43, 44 or 45" of the Code—while Section 6682 appears in subtitle F, chapter 68 of the Code.

Hence Section 6213 is really irrelevant, and Enghs' counsel had to know it.

■ Enghs' second argument against the Section 6682 penalty is even less colorable. As Enghs see it, Sections 6682(a) and (c) violate the Due Process Clause because they allow IRS to deprive Enghs of property (their $588.57) without a pre-deprivation hearing. But that position was found wholly without merit in *Capps v. Eggers*, 782 F.2d 1341, 1342 (5th Cir.1986), because a Section 6682 penalty is a *tax*, and the Due Process Clause is not violated by requiring a taxpayer to pay a tax levy before challenging its validity. For the same reason, taxpayer challenges to Sections 6702(a) and 6703(b),[11] which allow IRS to assess a penalty for filing a frivolous income tax return without pre-collection procedures, have been rejected by all the courts and have been labeled frivolous. See, e.g., *Anderson v. United States*, 754 F.2d 1270, 1271–72 (5th Cir.1985) (per curiam).

Enghs' counsel cites *Fuentes v. Shevin*, 407 U.S. 67, 80–84, 92 S.Ct. 1983, 1994–96, 32 L.Ed.2d 556 (1971) for the proposition that "[p]rocedural due process requires an opportunity for a hearing BEFORE the property in question is seized by the IRS" (Pl.Mem. at 10) (emphasis in original).

---

**9.** There is no right to a jury trial in the Tax Court. *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68 (7th Cir.1986).

**10.** Section 6682(c) reads:
Deficiency procedures do not apply.—Subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and cer-

tain excise taxes) shall not apply in respect to the assessment or collection of any penalty imposed by subsection (a).

**11.** Section 6703(b) is virtually identical to Section 6682(c) and simply makes deficiency procedures inapplicable to penalties under Section 6702.

That is a textbook example of selective— and misleading—reliance on case law.[12] Not only does counsel ignore language in *Fuentes* itself that directly contradicts his position (407 U.S. at 91–92 & n. 24, 92 S.Ct. at 1999–2000 n. 24), but he also conveniently ignores later Supreme Court decisions that have seriously cut back on the broad language in *Fuentes* (see, e.g., *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 615–20, 94 S.Ct. 1895, 1904–06, 40 L.Ed.2d 406 (1974)).

Finally, Enghs' lawyer attempts to distinguish the long line of cases allowing IRS to collect taxes without prior hearings by arguing Section 6682 imposes a penalty and not a tax. Again that ignores the spate of cases that have unanimously upheld IRS' ability to impose and collect civil penalties without a prior hearing.[13]

For example, *Jolly v. United States*, 764 F.2d 642, 645–46 (9th Cir.1985) gives a thorough explanation of why the Due Process Clause does not require pre-deprivation hearings in such situations. Counsel's attempt to use *Jolly* to support his argument is another example of reading with blinders on. In *Jolly* the provision of the Code at issue was Section 6703, which sets up certain procedural protections that other Code penalty provisions (including Section 6682) do not. Yet *Jolly*, 764 F.2d at 646 referred to those provisions but—in a sentence ignored by Enghs' counsel—specifically said even those additional procedures did not affect the constitutional analysis.

Counsel also cites *United States v. Childs*, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299 (1924), and *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962) in support of Enghs' tax v. penalty distinction. Both those cases involved a very different issue: IRS' right to collect penalties in bankruptcy. They are simply irrelevant to the constitutional argument Enghs are attempting to make here.

### Rule 11

■ Government's summary judgment motion also asks for imposition of Rule 11 sanctions on Enghs for suing on Counts I and III. Rule 11 establishes an objective standard, under which the conduct of a lawyer in bringing or maintaining litigation is compared with what would reasonably have been done by a competent attorney after reasonable inquiry. *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985). Good faith (in the familiar subjective sense) is not a defense to a Rule 11 motion. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986).

As recognized by Judge Cantrel when he rejected Enghs' Tax Court petition as to their 1979 deficiency, Enghs are "tax protesters bent on glutting the docket of [the Tax] Court and others with frivolous claims" (DX C, at 1). But the wishful thinking of such protesters, though it doubtless reflects a predisposition to believe the legal nonsense they proffer to

---

**12.** Enghs' counsel has been before this Court in a number of cases (both civil and criminal), representing persons who might be grouped as "tax protesters" of one kind or another. That much is unexceptionable—after all, one of the great traditions of the legal profession is to represent unpopular causes, or those perceived (rightly or wrongly) to be out of step with majority views. But one common thread that runs through such representation by Enghs' counsel is *not* acceptable from any lawyer: the lifting of a snippet from this case, a phrase from that case and perhaps a sentence from a third, then combining them to "prove" wages are not "income," or an individual is not a "person" under the Code so as to be required to pay taxes, or a tax return form can be filled with a host of untenable references to Fifth Amendment privileges and still quality as a "return," or the Sixteenth Amendment is unconstitutional, and on and on

(of course, these examples could be multiplied). It is bad enough when misguided lay persons, on the strength of such misinformation from false prophets, end up paying much more in interest and penalties than they would have borne had they complied with the Code—or even end up in a federal prison for tax evasion. But for a lawyer to foster such views among clients, or to foist them on courts, by the misleading use of legal analysis violates the lawyer's duties to the clients *and* the legal system. This opinion deals with the consequences of such violation later.

**13.** Counsel's attempts to distinguish those cases are also frivolous. Cases cannot be ignored simply because one party in the case was proceeding pro se or because they were decided by different circuits.

courts, is not the product of spontaneous generation. There is invariably a lawyer who has put together the melange necessary to make the untenable arguments, and frequently to provide the means of wish fulfillment to the misguided clients anxious to be persuaded (see n. 12). Here Enghs' attorney Andrew Spiegel ("Spiegel"), who signed their Complaint and drafted the memorandum opposing Government's motion for summary judgment, should bear ultimate responsibility for any Rule 11 sanctions.[14]

■ Rule 11 says Spiegel, by signing the Complaint and memorandum, certified Enghs' positions were "warranted by existing law" or they had a "good faith argument for the reversal of existing law." *Frost v. Commissioner of Internal Revenue*, 624 F.Supp. 316, 317–18 (S.D.Miss. 1985). To the contrary, existing law plainly demonstrated Enghs' positions in Counts I and III were groundless. Spiegel, an experienced lawyer in this area,[15] either knew that or, with a minimum of research, should have discovered it.

Spiegel's arguments opposing IRS' motion show not only that he ignored relevant and readily available precedent, but also that in several instances he actually misrepresented the law to this Court. Such actions pose the possibility of Spiegel's violation of the subjective ("improper purpose") as well as the objective standard of Rule 11. See *Frost*, 624 F.Supp. at 317–18. As *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68, 72 (7th Cir.1986) recently said:

> People who wish to express displeasure with taxes must choose other forums, and there are many available. Taxes are onerous no doubt, and the size of the tax burden gives people reason to hope that they can escape payment. Self-interest calls forth obtuseness. An obtuse belief—even if sincerely held—is no refuge, no warrant for imposing delay on the legal system and costs on one's adversaries. The more costly obtuseness becomes, the less there will be.

This Court therefore imposes sanctions on Enghs' attorney Spiegel for his improper certifications under Rule 11.[16] He is ordered to pay Government's expenses, including reasonable attorneys' fees, for defending against Counts I and III of Enghs' Complaint.

Accordingly Government counsel is ordered to deliver to Enghs' counsel and this Court, on or before May 11, 1987, a motion for a fee award reflecting:

1. an itemization of the time spent by each lawyer, reflecting the hourly rates claimed;[17] and

2. a statement of any factors, other than time and hourly rate, Government counsel deems relevant to the fee award.

Counsel for both sides are then directed to confer in an effort to narrow or eliminate entirely any need for an evidentiary hearing. Upon advice from both counsel, this

---

14. Rule 11 permits sanctions against the certifying attorney, the client or both.

15. Without any effort at the difficult task of research (difficult because this Court often chooses to issue oral bench rulings rather than written opinions), this Court recalls two of the occasions on which it has dealt with Spiegel as counsel in tax litigation: *United States v. Wojtas*, 611 F.Supp. 118 (N.D.Ill.1985); *United States v. Particle Data, Inc.*, 634 F.Supp. 272 (N.D.Ill.1986). In each of those instances Spiegel's lawyering regrettably required critical comment (*Wojtas*, 611 F.Supp. at 121–22; *Particle Data*, 634 F.Supp. at 275 n. 5). In this case Spiegel is clearly the party at fault for any Rule 11 violation.

16. Several of the cases rejecting claims like those made by Enghs in this case also imposed sanctions on the parties making such frivolous claims (see *Capps*, 782 F.2d at 1343; *Anderson*, 754 F.2d at 1272). Spiegel argues those cases are distinguishable because plaintiffs there also made other frivolous arguments, not made on Enghs' behalf before this Court. But it scarcely excuses Spiegel's irresponsible actions to point to what are arguably even more culpable actions of others.

17. Because Government did not do its Rule 56 job correctly the first time around (see n. 3), its application for fees should be tempered by eliminating any duplicative activity in that respect. Parenthetically, Government's error in that respect does not affect Spiegel's Rule 11 responsibility for having brought frivolous claims in the first place.

 

Court will establish any necessary further procedures.

### Conclusion

There are no genuine issues of material fact, and Government is entitled to a judgment as a matter of law on Counts I and III of Enghs' Complaint. Count I is barred by Section 6512 because Enghs have previously filed a petition on the same year before the Tax Court. As for Count III, Section 6213 did not bar Government from collecting a Section 6682 penalty from Enghs, and that penalty is constitutional. Enghs' attorney Andrew Spiegel is ordered to pay Government's expenses for defending against those counts. This action is set for a status hearing May 26, 1987 at 9:15 a.m. to discuss further procedures on that award and on Complaint Count II.