09-1702-cr(L), 09-1707-cr(CON), 09-1790-cr(CON)
United States v. Pfaff

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## AMENDED SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of October, two thousand ten.

PRESENT: DENNIS JACOBS,
                              Chief Judge,
              RALPH K. WINTER,
              JOSEPH M. McLAUGHLIN,
                              Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
United States of America,
              Appellee,

      -v.-                                     09-1702-cr(L)
                                               09-1707-cr(CON)
                                               09-1790-cr(CON)

Robert Pfaff, Raymond J. Ruble, also known as R.J. Ruble, John Larson,
              Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANTS:          ALEXANDRA A.E. SHAPIRO, Marc E. Isserles, Macht, Shapiro, Arato & Isserles LLP, New York, NY, David C. Scheper, Scheper, Kim & Overland LLP, Los Angeles, CA, for Defendant-Appellant Robert Pfaff.

1

STUART E. ABRAMS, Frankel & Abrams, New York, NY, Jack S. Hoffinger, Susan Hoffinger, Hoffinger, Stern & Ross, LLP, New York, NY, for Defendant-Appellant Raymond Ruble.

J. SCOTT BALLENGER, Lori Alvino McGill, Latham & Watkins LLP (Steven M. Bauer, Margaret A. Tough, San Francisco, CA), Washington, DC, for Defendant-Appellant John Larson.

**FOR APPELLEE:**     JOHN M. HILLEBRECHT, Margaret Garnett, Justin Anderson, Katherine Polk Failla, Assistant United States Attorneys, of counsel, for Preet Bharara, United States Attorney for the Southern District of New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Appellants' convictions and Larson's term of imprisonment be **AFFIRMED.**

Raymond Ruble, Robert Pfaff, and John Larson appeal from judgments of conviction and a sentence entered April 15, April 21, and April 24, 2009, respectively, in the United States District Court for the Southern District of New York (Kaplan, J.). Appellants were convicted of tax evasion, and sentenced principally to terms of imprisonment and fines. In a separate per curiam opinion filed today, we decide the challenge to Larson's fine, imposed under 18 U.S.C. § 3571(d). We assume the parties' familiarity with the underlying facts and the case's procedural history.

Appellants raise five issues here: [1] whether the jury instructions were flawed; [2] whether the evidence was sufficient to support their convictions; [3] whether the government's case at trial constructively amended the indictment; [4] whether they are entitled to have their indictments dismissed pursuant to United States v. Stein, 541 F.3d 130 (2d Cir. 2008); and [5] whether the district court erred in imposing Larson's sentence. The issues are considered seriatim.

2

**[1]** We find no error in the district court's jury instructions. "We review jury instructions de novo, and reverse only when the charge, viewed as a whole, constitutes prejudicial error." United States v. Amato, 540 F.3d 153, 164 (2d Cir. 2008). The district court charged the jury that a transaction lacks non-tax economic effect when there is "no reasonable possibility that the transaction would result in a profit." On the facts of this case (where the non-tax economic effect proffered by the defense was the possibility of profit), that was a correct statement of the law. See, e.g., Goldstein v. Commissioner, 364 F.2d 734, 740 (2d Cir. 1966) (disallowing "deduction for [transactions] that can not with reason be said to have purpose, substance, or utility apart from their anticipated tax consequences," in case where taxpayer could have realized a $22,875 profit given favorable market changes (emphasis added)). We have in the past affirmed jury instructions stating a narrower definition. See, e.g., United States v. Atkins, 869 F.2d 135, 140 (2d Cir. 1989) (approving instruction that transaction has no non-tax economic effect if it is "subject to no market risk"). But we have not held that those instructions state the outer limits of the economic substance doctrine. Nor do we find any error in the district court's circumstantial evidence examples, which were, if anything, favorable to the defense.

**[2]** The evidence was sufficient to support the convictions. When reviewing a conviction for sufficiency of evidentiary support, "the trial evidence is viewed most favorably for the Government" and "all reasonable inferences a jury may have drawn favoring the Government must be credited." United States v. Wexler, 522 F.3d 194, 206–07 (2d Cir. 2008). We affirm "'if any rational trier of fact could have found the essential elements of [the] crime beyond a reasonable doubt.'" Id. at 207 (emphasis omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

There is sufficient evidence that the transaction lacked any non-tax economic effect. Testimony described the chances of profiting from the investments as "basically zero."

Sufficient evidence also supports the jury's finding that the transactions were entirely motivated by tax purposes. Clients testified that the transactions were marketed solely as tax-avoidance schemes, and that, as clients, they had no non-tax business purpose in executing them. Evidently, that is why, at the outset of the

3

purportedly seven-year scheme, a good number of BLIPS clients attempted to limit their commitment to sixty days, even though exiting so early would significantly limit their (already nugatory) chances of profiting on the currency forwards. BLIPS was designed, marketed, and executed as a tax shelter; and the jury was warranted in concluding that all parties knew BLIPS's profit potential to be nothing more than a pretext.

In a challenge to the finding of willfulness, Appellants argue that "economic substance" law was too vague to support their convictions. Citing United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000), Appellants contend that economic substance law was not sufficiently "knowable." But "knowability," except perhaps as probative of a defendant's subjective belief in the lawfulness of his conduct, is only relevant insofar as it bears on constitutional vagueness. Vagueness of the law does not ipso facto negate a jury finding of willfulness. See United States v. Ingredient Tech. Corp., 698 F.2d 88, 97 (2d Cir. 1983). And economic substance law is not unconstitutionally vague: It has been applied in criminal cases before, and (as discussed) is not unsettled in the way Appellants contend. Cf. Pirro, 212 F.3d at 91 (affirming partial dismissal of an indictment insofar as it charged a violation of a purported legal duty the existence of which was an open question).

In addition, sufficient evidence was presented to the jury to support its finding that Ruble either knew or consciously avoided knowing that the taxpayers lacked a non-tax business purpose for engaging in the transaction, and that there was no reasonable possibility that the transaction would yield a profit. As discussed above, Ruble was aware that the investors had no reasonable expectation of a profit unless they remained invested for the long term, and that most of the investors had exited the deals within sixty days. Moreover, the jury was free to infer that Ruble knew that the transaction had no business purpose based on his close relationship with Pfaff and Larson.

Finally, we disagree that Appellants' actions fall outside the ambit of the tax evasion statute, 26 U.S.C. § 7201. Section 7201 provides, in relevant part:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or

4

the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony.

The statute's expansive language is not susceptible to a limitation that would exclude Appellants. No case interpreting § 7201 appears to have adopted any limit to its reach; those cases that have considered § 7201's scope have rather expressed it expansively, see, e.g., United States v. Townsend, 31 F.3d 262, 267 (5th Cir. 1994) ("[Section] 7201 is not limited to prosecutions of those who evade taxes that they may owe themselves, but rather it encompasses prosecutions of any person who attempts to evade the tax of anyone."). Appellants involved themselves, with the requisite intent, in a scheme to avoid taxes, and we see no statutory basis for excluding them from liability under § 7201.

**[3]** Appellants' argument concerning constructive amendment is reviewed de novo. United States v. Rigas, 490 F.3d 208, 225 (2d Cir. 2007). They argue that the government undertook to prove at trial a conspiracy of the Appellants *against* KPMG, rather than the charged conspiracy *with* KPMG. But Appellants were acquitted of conspiracy. Constructive amendment of the conspiracy charge would have warranted vacatur of that charge only; the remainder of the indictment would have stood. See United States v. Milstein, 401 F.3d 53, 64–66 (2d Cir. 2005) (per curiam) (vacating conviction on one count for constructive amendment of indictment with respect to that count, and rejecting argument that the constructive amendment warranted vacatur of convictions on other counts). Because no Appellant was convicted of conspiracy, we would be unable to afford relief even if we were to find error.

**[4]** The district court found that KPMG would not have paid Pfaff's and Larson's legal fees in this case, and that dismissal under our decision in Stein was therefore unwarranted. We review this finding for clear error. Stein, 541 F.3d at 142, 146. Pfaff and Larson point to a number of facts that they claim demonstrate the clear error of the district court's finding, none persuasive. Most strongly emphasized are three pieces of evidence.

First is a 2004 statement by KPMG then-CEO Gene O'Kelly that "[a]ny present or former members of the firm asked to appear will be represented by competent coun[se]l at the firm's expense." United States v. Stein, 495 F. Supp. 2d 390, 407 (S.D.N.Y. 2007) (first emphasis added). But this

statement speaks not at all to what conduct the promise covers, and is therefore of limited independent value. Pfaff and Larson note that some of their indicted conduct occurred while they were at KPMG; but that conduct was minimal relative to the indicted conduct after they left. There is no direct evidence that KPMG considered such a small proportion to be enough, and it was reasonable for the district court to infer in the circumstances that KPMG would not have paid Pfaff's and Larson's fees, given the incentives driving fee payment in the first place, see Stein, 541 F.3d at 144 ("[A] firm may have potent incentives to advance fees, such as the ability to recruit and retain skilled professionals in a profession fraught with legal risk.").

Second, Pfaff and Larson compare their situation to that of Gregg Richie, whose attorney's fees, the district court found, would have been paid by KPMG. However, in contrast to Pfaff and Larson, Ritchie had little involvement with BLIPS after leaving KPMG. Ritchie's relevant conduct post-KPMG appears to constitute only a small part of his involvement with BLIPS, as compared with his role as head of KPMG's CaTs ("Capital Transaction Strategies") group--"[t]he KPMG group focused on designing, marketing, and implementing tax shelters for individual clients."

Finally, Pfaff and Larson point to KPMG's payment of their legal fees in the Perez v. KPMG civil case, which they contend demonstrated KPMG's willingness to pay their legal fees in connection with legal proceedings arising from BLIPS. But the Perez case involved conduct undertaken entirely during Pfaff's and Larson's employment at KPMG, see Notice of Removal at 25-37, Perez v. KPMG, No. 7:03-cv-00026 (S.D. Tex. Jan. 24, 2003); and is therefore distinguishable on the lines discussed.

**[5]** Larson argues that his term of imprisonment is impermissibly longer than the sentences imposed on other defendants. We review sentencing decisions for "reasonableness," employing "the familiar abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 46 (2007). As Larson contends, the district court relied on the defendants' ages, observing that any lengthy sentence "would be a life sentence without parole for all these men." Since Larson is just 13 months younger than Pfaff, it would have been questionable to rely on this factor alone to justify a sentence disparity. But the district court stated that age was merely one of the factors justifying the

6

difference.  The district court properly relied on the fact that Larson moved assets abroad in order to protect them from creditors and from the government.  See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

In a separate per curiam opinion filed today, we decide the challenge to Larson's fine, imposed under 18 U.S.C. § 3571(d).  Finding no merit in Appellants' remaining arguments, we accordingly **AFFIRM** Appellants' convictions and Larson's term of imprisonment.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK