**17-503**
*Larson v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2017

(Argued: December 15, 2017   Decided: April 25, 2018)

Docket No. 17-503

_____

JOHN M. LARSON,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,

*Appellee*.*

_____

Before:

PARKER, WESLEY, and CHIN, *Circuit Judges*.

_____

* The Clerk of the Court is respectfully directed to amend the
caption.

Plaintiff-Appellant John Larson appeals a December 28, 2016 judgment of the District Court for the Southern District of New York (Caproni, *J.*) dismissing his complaint. After being assessed approximately $160 million in penalties by the Internal Revenue Service, Larson filed suit for review of his penalties on several statutory and constitutional grounds. The District Court dismissed his complaint for lack of subject matter jurisdiction and failure to state a claim. We hold that the full-payment rule applies to Larson's 26 U.S.C. § 6707 penalties, and that his tax refund, due process, Administrative Procedure Act, and Eighth Amendment claims were properly dismissed by the District Court. Accordingly, we **AFFIRM** the judgment of the District Court.

—————————

REED J. HOLLANDER, Nelson Mullins Riley & Scarborough, LLP, Raleigh, NC (C. Wells Hall, III, Nelson Mullins Riley & Scarborough, LLP, Charlotte, NC; Megan L. Brackney, Kostelanetz & Fink, LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

ANDREW E. KRAUSE, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*) *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, *for Appellee*.

T. Keith Fogg, Director, Harvard Federal Tax Clinic, Jamaica Plain, MA, *for Amicus Curiae Legal Services Center of Harvard Law School, in Support of Plaintiff-Appellant*.

—————————

WESLEY, *Circuit Judge*:

John M. Larson was involved with—and later convicted of crimes related to—the organization of several fraudulent tax shelters. *See United States v. Pfaff*, 407 F. App'x 506, 508–11 (2d Cir. 2010) (summary order); *Pfaff v. United States*, 989 F. Supp. 2d 301, 303 (S.D.N.Y. 2013). At the time Larson was organizing the tax shelters, the Internal Revenue Service (the "IRS") required organizers/promoters to register tax shelters "not later than the day on which the first offering for sale of interest in such tax shelter occurs." 26 U.S.C. § 6111(a) (1997) (current version at 26 U.S.C. § 6111(a) (2005)). Organizers/promoters who failed to register a tax shelter as required were subject to a penalty of "an amount equal to the greater of—(A) 1 percent of the aggregate amount invested in such tax shelter, or (B) $500." 26 U.S.C. § 6707(a)(2) (1997) (current version at 26 U.S.C. § 6707 (2004)). Eight years after the IRS notified Larson that he was under investigation, it informed him via letter that it considered him a tax shelter organizer with respect to the tax shelters in question. The letter noted that Larson therefore had a duty to register the tax shelters and was subject to aggregate penalties of $160,232,026[1] for his failure to do so.

---

[1] Larson claims that the IRS incorrectly interpreted "aggregate amount invested" in 26 U.S.C. § 6707(a)(2) to include loans and loan premiums not actually invested by the transaction participants, resulting in substantially larger penalties than the approximately $7 million the penalties would have totaled otherwise.

One month later the IRS informed Larson that it would assess the penalties against him personally.

Shortly thereafter, Larson filed an appeal to the IRS Office of Appeals. That office recognized that the IRS failed to account for the joint and several liability of Larson's co-promoters when computing his penalties, in accord with its view of 26 U.S.C. § 6707. Internal Revenue Service, Non Docketed Service Advice Review, IRS NSAR 20032901F, 2003 WL 22205991 (July 18, 2003). It therefore reduced the penalties assessed against Larson to $67,661,349—a reduction of nearly $93 million—and informed Larson that he would need to pay the remaining penalty amounts and file a Form 843 Claim for Refund and Request for Abatement ("Refund Claim") if he wanted to contest the assessment in federal court. Larson then made a payment of $1,432,735 (the "Initial Payment") and filed his Refund Claim; the IRS rejected Larson's claim because of his failure to pay the entire assessed penalties.

Larson then filed suit in the United States District Court for the Southern District of New York seeking: (1) refund of the Initial Payment and abatement of the remainder of the penalties[2] pursuant to 26 U.S.C. § 7422; (2) judicial review of the IRS's determination of his penalties under the Administrative Procedure Act (the "APA") pursuant to 5 U.S.C. §§ 702, 704; (3) a holding that his

---

[2] After the receipt of additional payments from other co-promoters, in March 2016 the IRS further reduced Larson's penalty by $4,250,000. The current amount owed by Larson is therefore $61,534,027.

penalties were an excessive fine under the Eighth Amendment; (4) to compel the IRS to disclose information about the collection of any penalty amounts from his co-promotors; and (5) attorney's fees.

The Government moved to dismiss Larson's refund claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Government argued that because Larson had not paid the assessed penalties in full, the District Court lacked jurisdiction under 28 U.S.C. § 1346(a)(1). The Government also argued that requiring full payment of the assessed penalties prior to any judicial review of the assessment did not violate due process. In a well-reasoned opinion, the District Court agreed. The District Court concluded that the full-payment rule applied to Larson's § 6707 penalties and it therefore lacked subject matter jurisdiction, and that application of the rule did not violate Larson's right to due process. *Larson v. United States*, 16-245, 2016 WL 7471338, at *3–7 (S.D.N.Y. Dec. 28, 2016).

With regard to Larson's remaining claims, the Government argued that review of a tax deficiency under the APA was unavailable because Congress provided a specific review procedure—tax refund suits—and that the Eighth Amendment does not create a private right of action, preventing the District Court from hearing Larson's excessive fines claim. The District Court again agreed, concluding that Larson had an adequate alternative to APA review and that the Eighth Amendment claim was defeated by the availability of alternative review and, separately, the complaint was factually insufficient. *Id.* at *8–12.

## DISCUSSION

On appeal, Larson makes four main arguments: (1) the full-payment rule only applies to tax deficiency[3] cases under § 1346(a)(1) where Tax Court relief was available; (2) the application of the full-payment rule to Larson violates his Fifth Amendment right to due process because he cannot fully pay his penalties and cannot seek review without having paid the penalties; (3) district court review of the IRS's determination pursuant to the APA is proper because of the lack of adequate alternatives to review pursuant to the APA; and (4) the penalties are an excessive fine under the Eighth Amendment. We address each of Larson's arguments in turn.

---

[3] A deficiency is based on a determination that more tax is due. According to the Supreme Court, a deficiency "is the amount of tax imposed less any amount that may have been reported by the taxpayer on his return." *Laing v. United States*, 423 U.S. 161, 173 (1976). Tax Court review is available for deficiencies and does not require payment of the deficiency prior to commencement of the action in Tax Court. However, Tax Court review is unavailable for those like Larson who face § 6707 penalties. *See Smith v. Comm'r*, 133 T.C. 424, 429–30 (2009); *see also Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 778 (7th Cir. 2017).

### A. The Full-Payment Rule and 26 U.S.C. § 6707 Penalties[4]

Pursuant to 28 U.S.C. § 1346(a)(1), federal district courts have original jurisdiction of:

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).[5] It is undisputed that Larson's refund claim arises under § 1346(a)(1).

---

[4] This Court reviews a "district court's factual findings for clear error and its legal conclusions *de novo*" on an appeal from dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 76–77 (2d Cir. 2017) (internal quotation mark and brackets omitted). This Court reviews a district court's decision to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* at 77 (internal quotation mark omitted).

[5] Federal district courts have original jurisdiction over such refund actions concurrently with the United States Court of Federal Claims. *Id.* at § 1346(a).

It is not disputed that Larson cannot bring his claim in the Tax Court. His only judicial recourse is a refund action in the District Court (or the Court of Claims). Unfortunately for him, § 1346(a)(1) does not differentiate between assessed penalties and other tax assessments that are the result of deficiencies. *See id.* Further, jurisdiction is granted over "[a]ny civil action against the United States for the recovery of . . . any penalty claimed to have been collected without authority . . . ." *Id.* This provision has long been interpreted to require the full payment of the contested tax as a jurisdictional prerequisite to a tax refund action. Larson's penalties have not been collected: he has not made full payment. The plain language of 26 U.S.C. § 6707 also favors our reading, as the statute does not provide for partial-payment review of Larson's penalties. Further, our reading is supported by Congress's decision to provide partial-payment review for other assessable penalties, but not for § 6707. *See* 26 U.S.C. §§ 6694(c), 6703(c). If the full-payment rule did not apply to assessable penalties, there would be no reason for Congress to include partial-payment provisions in other assessable penalty statutes. The District Court did not have jurisdiction to hear Larson's claim under § 1346(a)(1).[6]

Larson and *amicus* both argue that while a pair of Supreme Court decisions—*Flora v. United States* (*Flora I*), 357

---

[6] There is one acknowledged exception to the full-payment rule for divisible taxes. *See Flora v. United States* (*Flora II*), 362 U.S. 145, 175 nn.37–38 (1960). Larson argued below that § 6707 penalties were divisible, but the District Court rejected that argument. Larson does not raise the issue on appeal.

U.S. 63 (1958), and *Flora II*—held that § 1346(a)(1) included a full-payment requirement, the rule only applies to tax deficiencies—where Tax Court review is available—and not to assessable penalties. In Larson's view, the *Flora II* Court made its intent apparent when it stated towards the end of its opinion:

> A word should also be said about the argument that requiring taxpayers to pay the full assessments before bringing suits will subject some of them to great hardship. This contention seems to ignore entirely the right of the taxpayer to appeal the deficiency to the Tax Court without paying a cent.

*Flora II*, 362 U.S. at 175. We disagree with Larson's interpretation of this passage. In *Flora II*, the Supreme Court concluded that § 1346 "correctly construed, requires full payment of [an] assessment before an income tax refund suit can be maintained in a Federal District Court." *Id.* at 177. In *Flora I* the Supreme Court had reached a similar conclusion: "a construction [of § 1346(a)(1)] requiring full payment would appear to be more consistent with the established meaning of the statutory language[,] . . . the situation with respect to tax suits against the United States at the time [§ 1346(a)(1)] was enacted, the express purpose of its enactment, and subsequent expressions of congressional intent . . . ." *Flora I*, 357 U.S. at 69–70.

The *Flora* decisions recognized the Government's "substantial interest" in taxation and in maintaining the

"smooth functioning of th[e taxation] system" that Congress intentionally and purposefully crafted. *Flora II*, 362 U.S. at 175–76; *see Flora I*, 357 U.S. at 69–70. The *Flora II* majority focused a significant amount of its opinion on a review of the history of "suit[s] to recover a tax illegally assessed," *Flora II*, 362 U.S. at 152, and the greater statutory scheme Congress fashioned around § 1346(a)(1), *id.* at 152–67.[7] While it is true that *Flora I* and *Flora II* acknowledge the existence and availability of Tax Court review, *see Flora I*, 357 U.S. at 75–76; *Flora II*, 362 U.S. at 175, Tax Court availability was not essential to the Supreme Court's conclusion in either opinion. The basis of the *Flora* decisions is that when Congress enacted § 1346(a)(1) it understood the statute to require full-payment to maintain "the harmony of our carefully structured twentieth century system of tax litigation," not that the full-payment rule only applies when Tax Court review is available. *Flora II*, 362 U.S. at 176–77.

---

[7] *Flora II*'s majority noted that the "statutory language . . . [wa]s inconclusive and [the] legislative history . . . [wa]s irrelevant" before moving into its analysis of the "historical basis" for tax refund suits. *Id.* at 152. Although the *Flora II* majority struggled to divine the existence of the full-payment rule from the plain language of the statute, that does not trouble our conclusion that § 1346(a)(1)'s full-payment rule applies to Larson's penalties. The Supreme Court was evaluating whether the plain language of § 1346(a)(1) included the full-payment rule. The question before us is different: whether the language of § 1346(a)(1) indicates that the full-payment rule should only apply to tax deficiencies and not assessable penalties.

The Seventh Circuit agrees: where a "taxpayer cannot seek refund in the Tax Court but must proceed in a federal district court[,] . . . *Flora* counsels that [the taxpayer's] hardship is a matter for legislative, not judicial[,] remedy." *Curry v. United States*, 774 F.2d 852, 854 (7th Cir. 1985) (internal citation omitted). The Seventh Circuit continued: "carv[ing] out a 'hardship' exception to the *Flora* rule . . . would endanger the 'public purse' and disrupt the smooth functioning of the tax system . . . ." *Id.* at 855.

In *Flora* the Supreme Court recognized that choosing the district court as the forum in which to litigate the legitimacy of a deficiency had a cost to taxpayers—full payment of the taxes claimed to be due in *Flora*. The Court took comfort in knowing that taxpayers unable to meet the jurisdictional bar of § 1346(a)(1) could go to Tax Court without prepayment and pursue their claims if they chose to do so. But under § 1346(a)(1) the ticket to district court was full payment of the deficiency as mandated by the history of tax refund suits and the greater statutory scheme. Although perhaps pleased that Congress had provided an alternate forum for some taxpayers, the Court did not rewrite the statute—as Larson would have us do—to engraft an alternate forum requirement for the application of the full-payment rule plainly set out in § 1346(a)(1).[8]

---

[8] Larson relies on another Supreme Court decision, *Laing v. United States*, wherein the Supreme Court considered whether the IRS had to assess a deficiency and mail a notice of deficiency when it had prematurely terminated a taxable period. 423 U.S. 161. The majority concluded that the IRS had to assess a deficiency and did

**B. The Fifth Amendment and Prepayment Review of § 6707 Penalties**

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V. As the Supreme Court has noted, "due process is flexible and calls for such procedural protections as the particular circumstance demands. . . . [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). If the full-payment rule applies to § 6707 penalties, Larson asserts, he will be unconstitutionally deprived of due process by application of the full-payment rule because he cannot pay the imposed penalties and cannot seek review without paying those penalties. In essence, he says "it is just not fair."

The District Court correctly concluded that the full-payment rule, as applied here, does not violate Larson's right to due process. There is a strong governmental interest in the efficient administration of the tax system as crafted by Congress. That interest allows courts to conclude that adequate summary or administrative prepayment review of

---

not address *Flora* at all. *Id.* at 163–85. Justice Blackmun, writing in dissent, explicitly stated that "the full-payment rule applies only where a deficiency has been noticed, that is, only where the taxpayer has access to the Tax Court for redetermination prior to payment." *Id.* at 208–09 (Blackmun, *J.*, dissenting). Larson relies on Justice Blackmun's dissent, but Justice Blackmun's view did not garner majority support. No subsequent majority of the Supreme Court has adopted that understanding of the statute.

tax assessment—with adequate post-payment judicial review—provides the required constitutional procedural protections.

Two of our sister circuits agree. In *Kahn*, the Third Circuit noted that "[i]n the tax context, the constitutionality of a scheme providing for only post-assessment judicial review is well-settled." *Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746–47 (1974); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611 (1974); *Bull v. United States*, 295 U.S. 247, 259–60 (1935); and *Phillips v. Comm'r*, 283 U.S. 589, 595 (1931)). Similarly, the Sixth Circuit in *Johnston* concluded "that the payment of taxes as a precondition to sue for their return places a burden on the taxpayer, [but] we do not believe that it is such as to deny him the fundamental processes of fairness required by the Fifth Amendment . . . ." *Johnston v. Comm'r*, 429 F.2d 804, 806 (6th Cir. 1970).[9]

Larson's appeal to the IRS Office of Appeals resulted in a nearly $100 million reduction. Larson doesn't take issue with his substantial victory at the IRS Office of Appeals; he does not adequately contend that it was neither an effective nor meaningful review of his complaints. He simply thinks

---

[9] *Johnston* relied on the reasoning in *Cheatham v. United States*, 92 U.S. 85, 88–89 (1875); *Flora* also relied on *Cheatham*. In *Cheatham*—prior to the creation of the Tax Court—the Supreme Court noted that "the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues." *Cheatham*, 92 U.S. at 88–89.

the IRS misapplied the law. His complaint is not procedural, it is substantive.[10]

Larson maintains that an administrative prepayment review does not satisfy the requirements of due process. For support, Larson looks to *Phillips v. Commissioner*. In *Phillips*, the IRS sought to collect a tax deficiency from the estate of a stockholder of a dissolved corporation, and the estate argued that the summary administrative proceedings violated its right to due process. 283 U.S. at 592–94. *Phillips* acknowledged that the two methods of review available in that case—an action to recover the amount paid after prepayment of the tax without administrative relief or immediate redetermination of the tax liability by the Board of Tax Appeals—satisfied due process, but *Phillips* did not conclude that due process required both. *Id.* at 597–98. The Supreme Court in *Phillips* was clear:

> The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where . . . adequate opportunity

---

[10] Larson suggests that the IRS in "hypothetical" proceedings could intentionally inflate penalties in bad faith to bar judicial review. Larson has not identified or alleged any bad faith by the IRS here, nor any violation of the IRS Office of Appeals's procedures. He is unhappy with the IRS's calculation of his penalties, and disputes that calculation, but that dispute is substantive. But, beyond his bare argument on appeal, Larson failed to plead any facts to suggest that the administrative review he received at the IRS was, for example, tainted by bad faith or was otherwise inappropriate.

is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Property rights must yield provisionally to government need . . . [to promptly] secure its revenues.

*Id.* at 595–96 (internal citations and footnote omitted). While Congress decided to provide prepayment review in some situations, its failure to do so when the penalty is beyond the taxpayer's resources is not a due process defect. We know of no case that supports that view.

Consideration of the factors from *Mathews v. Eldridge*, 424 U.S. 319 (1976), also militates against Larson. In *Mathews*, the Supreme Court instructed courts to consider three factors when faced with a due process claim: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. The Supreme Court explained that "[t]he ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." *Id.* at 348. Further, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the

15

capacities and circumstances of those who are to be heard to insure [sic] that they are given a meaningful opportunity to present their case." *Id.* at 349 (internal quotation marks and citation omitted).

Larson's interest is not insignificant; the IRS has imposed onerous penalties that Larson claims he cannot pay. But, as we previously noted, the IRS Office of Appeals review resulted in a substantial reduction of Larson's penalties. No review is perfect and Larson offers no record-based criticism of how the appeal was conducted. We are satisfied that the current procedures effectively reduced the risk of an erroneous deprivation and gave Larson a meaningful opportunity to present his case. Indeed, the Seventh Circuit recently observed that the IRS Office of Appeals "is an independent bureau of the IRS charged with impartially resolving disputes between the government and taxpayers," and that "Congress has determined that hearings before this office constitute significant protections for taxpayers." *Our Country Home Enters., Inc.*, 855 F.3d at 789. Lastly, the governmental interest here is singularly significant due to the careful structuring of the tax system and the Government's "substantial interest in protecting the public purse." *Flora II*, 362 U.S. at 175. Considering all three factors, our *Mathews* analysis weighs in the Government's favor. Therefore, application of the full-payment rule to Larson's § 6707 penalties does not result in a violation of Larson's due process rights.

**C. Administrative Procedure Act Review of Larson's § 6707 Penalty**

APA review is limited to (1) final agency action (2) not committed to agency discretion by law (3) where Congress has not implicitly or explicitly precluded judicial review. *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008) (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 673 (1986); *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003); and *Air Espana v. Brien*, 165 F.3d 148, 151–54 (2d Cir. 1999)). The APA also "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation marks omitted).[11] "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of

---

[11] There is also a question as to whether the District Court would have subject matter jurisdiction over Larson's potential APA claim. *See Larson*, 16-245, 2016 WL 7471338 at *7 n.12. Generally, district courts have jurisdiction over APA review pursuant to 28 U.S.C. § 1331. *Sharkey*, 541 F.3d at 84. Sovereign immunity is waived by the APA for non-monetary damages claims, 5 U.S.C. § 702, but the Anti-Injunction Act, 26 U.S.C.§ 7421(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), prohibit injunctive and declaratory relief for claims involving taxes. The Anti-Injunction Act includes a further exception allowing those who do not have an alternate remedy to pursue their claim. *South Carolina v. Regan*, 465 U.S. 367, 378 (1984). Larson's ability to seek an injunction pursuant to the APA therefore also depends on our determination of the availability of alternate review.

17

jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Id*. Larson claims he has been adversely affected by the IRS's assessment of the penalties, a tax-refund suit does not provide adequate review due to the staggering amount of the penalties, and Congress has not precluded review of § 6707 penalties pursuant to the APA.

Larson's claim pertains to a final agency action that was not committed to agency discretion by law. His claim runs into difficulty, however, when analyzing whether Congress implicitly or explicitly precluded judicial review, and whether Congress has provided for "special and adequate" review. This Court has noted that "the APA's strong presumption in favor of judicial review" of administrative action requires clear and convincing evidence of congressional intent to overcome. *Sharkey*, 541 F.3d at 84. While it is true that § 6707 does not expressly preclude judicial review, Congress did not include any language in § 6707 to except assessed penalties under the statute from the full-payment rule. The absence of any exception is conspicuous because Congress has expressly provided for partial-payment exceptions in other penalty statutes. *See* 26 U.S.C. §§ 6694(c), 6703(c).

Examining § 1346(a)(1)'s and § 6707's respective places within the tax system supports that conclusion. As discussed previously, Congress has treated tax claims differently and has provided for post-payment judicial review of assessed taxes in district court with a few explicit exceptions. It seems contradictory to conclude that the full-payment rule applies to § 1346(a)(1)—as *Flora* held many

18

years ago—but that Congress did intend to allow judicial review under the APA prior to full payment without enacting an additional express authorization. It is clear to us that Congress intended the full-payment rule of § 1346(a)(1) to apply to § 6707 penalties, including Larson's; Congress thus implicitly precluded prepayment judicial review of Larson's penalties under the APA.

Even if Congress did not implicitly preclude judicial review, Congress has provided special and adequate review procedures, and APA review is therefore inappropriate. Larson's failure to comply with the scheme established by Congress—by failing to prepay the assessed penalties—does not render the review procedures inadequate. Larson has an adequate remedy instead of APA review: follow Congress's established scheme by paying his penalties and then filing a tax-refund claim pursuant to § 1346(a)(1). We are sympathetic to Larson's dilemma, but that does not permit us to employ APA-based jurisdiction where Congress has provided for review through a specific statutory procedure.

Larson cites to several cases in support, arguing that although they may be factually distinguishable they demonstrate that courts have found tax-refund suits to provide inadequate review. The problem with Larson's argument is two-fold: (1) none of the cases involve a judicial determination that the APA allows a federal court to review a taxpayer-specific ruling; and (2) the inadequacy of judicial review arose out of the particular facts of each case and not the application of a statute like § 1346. *National Restaurant Association v. Simon* involved the adequacy of a claim under the Anti-Injunction Act—the only way for the plaintiffs to

obtain review of the regulation they sought to challenge was to first violate it. 411 F. Supp. 993, 996 (D.D.C. 1976).

*Estate of Michael ex rel. Michael v. Lullo* is another non-APA case. 173 F.3d 503 (4th Cir. 1999). *Lullo* involved a unique circumstance of claims of bad faith by the IRS warranting a mandamus action, as "the actions of the IRS [we]re transparently baseless, in that it [wa]s pursuing th[e] matter after the statute of limitations clearly ha[d] barred collection or assessment of further taxes." *Id.* at 510. After an estate paid the assessed tax and the statute of limitations had run, the IRS "discovered" a mistake in its original assessment and decided to reduce one of the estate's tax credits in the amount of the miscalculation to create an unpaid balance and deficiency owed by the estate. *Id.* at 504–07. Unlike *Lullo*, where "the IRS . . . maintained its baseless position for more than five years . . . despite its utter lack of legal support," here, there are no plausibly-pleaded allegations of bad faith on the part of the IRS. *Id.* at 511.

In the final case cited by Larson, *Cohen v. United States*, the D.C. Circuit permitted APA review of IRS procedure where the appellants challenged the procedure itself as substantively unreasonable. 650 F.3d 717, 732 (D.C. Cir. 2011).[12] The D.C. Circuit expressly noted that: "[i]n the tax context, the only APA suits subject to review would be those

---

[12] In *Cohen*, the D.C. Circuit stated that "the adequacy of [the IRS procedure] is the gravamen of [a]ppellants' suit. Appellants claim [the IRS procedure] is unlawful, and therefore inadequate, because it was not subject to notice and comment rulemaking and is substantively unreasonable." *Id.*

cases pertaining to final agency action unrelated to tax assessment and collection." *Id.* at 733. The court in *Cohen* took pains to distinguish cases challenging the individual assessment or collection of a tax from a challenge to refund procedure. *Id.* Larson challenges the individual assessment of the penalty, not whether a procedure was unlawful and inadequate due to a lack of notice and comment rulemaking and substantive unreasonableness. *Id.* at 732. These cases do not persuade us that the review procedures are inadequate and warrant a departure from the tax system carefully constructed by Congress. This is especially so where Larson has had a chance of meaningful review during his administrative, non-judicial appeal. The system laid out by Congress may seem like bad policy to Larson, but his problem requires a legislative—rather than a judicial—solution.

## D. The Eighth Amendment and Larson's Penalties

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed . . . ." U.S. CONST. amend. XIII. We have serious doubts that the District Court had subject matter jurisdiction over the Eighth Amendment claim. Larson wisely disclaims any intention to seek monetary damages, for "[u]nder the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Larson asserts that his claim is for equitable relief and that the District Court can review his claim as part of his APA action. His claim for equitable relief under the APA is barred

by the Anti-Injunction Act or the Declaratory Judgment Act unless he lacks an adequate remedy. Larson has an adequate remedy; he simply doesn't like it. Therefore, the District Court lacked subject matter jurisdiction over his Eighth Amendment claim and dismissal was proper. Because we conclude that the District Court lacked subject matter jurisdiction, we decline to assess whether Larson's complaint successfully stated an Eighth Amendment claim.

_____

We close with a final thought. The notion that a taxpayer can be assessed a penalty of $61 million or more without any judicial review unless he first pays the penalty in full seems troubling, particularly where, as Larson alleges here, the taxpayer is unable to do so. But, "[w]hile the *Flora* rule may result in economic hardship in some cases, it is Congress' responsibility to amend the law." *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991).

We **AFFIRM** the District Court's dismissal of Larson's complaint. This Court's order dated October 27, 2017, resolved the two motions by Larson dated September 5, 2017, for judicial notice of the *Laing* oral argument.