**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTERIOR GLASS SYSTEMS, INC., *Plaintiff-Appellant*, | No. 17-15713 |
| v. | D.C. No. 5:13-cv-05563-EJD |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted September 13, 2018
San Francisco, California

Filed June 26, 2019

Before:  A. Wallace Tashima, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

# SUMMARY[*]

## Tax

The panel affirmed the district court's summary judgment in favor of the United States in a tax refund action by taxpayer Interior Glass Systems, Inc.

Taxpayer joined a Group Life Insurance Term Plan (GLTP) to fund a cash-value life insurance policy owned by its sole shareholder and only employee. Under Notice 2007-83, the Internal Revenue Service requires disclosure of certain "listed transactions" that involve cash-value life insurance policies, because of their potential for use in tax-avoidance schemes. The parties agree that taxpayer's transaction satisfies three of the four elements of a listed transaction. The district court determined that taxpayer's transaction—joining the GLTP—was substantially similar to a listed transaction and should have been disclosed, and the panel agreed.

The panel also held that taxpayer's procedural due process rights were not violated when it was required to pay penalties for non-disclosure in full before seeking judicial review. The panel held that taxpayer was not entitled to pre-collection judicial review under *Jolly v. United States*, 764 F.2d 642 (9th Cir. 1985).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John P. McDonnell (argued), Law Offices of John P. McDonnell, Los Altos, California, for Plaintiff-Appellant.

Teresa E. McLaughlin (argued) and Geoffrey J. Klimas, Attorneys; David A. Hubbert, Acting Assistant Attorney General; Thomas Moore, Assistant United States Attorney; Brian Stretch, United States Attorney; Tax Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

**OPINION**

WATFORD, Circuit Judge:

The Internal Revenue Service (IRS) requires taxpayers to disclose their participation in certain transactions, known as "listed transactions," that the agency has designated for close scrutiny. 26 C.F.R. § 1.6011-4(a), (b)(2); *see* 26 U.S.C. § 6011(a). To compel compliance with this obligation, Congress has authorized the IRS to impose monetary penalties on those who fail to file the required disclosure statement. 26 U.S.C. § 6707A(a). The IRS determined that the taxpayer in this case, Interior Glass Systems, Inc., failed to disclose its participation in a listed transaction in three different tax years and imposed a penalty of $10,000 per year. Interior Glass paid the penalties and then challenged their imposition by seeking an administrative refund. When that challenge failed, the company filed this action in the district court to recover the money it had been forced to pay. *See* 28 U.S.C. § 1346(a)(1); 26 U.S.C. § 7422(a). The district court granted

the government's motion for summary judgment, concluding that the penalties were properly imposed.

On appeal, Interior Glass raises two principal arguments. First, it contends that the penalties were wrongly imposed because it did not actually participate in a listed transaction and thus had nothing to disclose. Second, Interior Glass contends that its due process rights were violated because it was not afforded an opportunity for pre-collection judicial review. We find neither contention meritorious and accordingly affirm.

I

Treasury Regulation § 1.6011-4, which imposes the disclosure obligation, defines the term "listed transaction" as follows: "A listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction." 26 C.F.R. § 1.6011-4(b)(2); *see also* 26 U.S.C. § 6707A(c)(2) (providing similar definition of the term). As the regulation states, one of the ways the IRS identifies listed transactions is by issuing published notices.

In 2007, the IRS issued Notice 2007-83, titled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits." 2007-2 C.B. 960, 960. The Notice designates certain transactions involving cash-value life insurance policies as listed transactions because, in the agency's view, they improperly allow small business owners to receive cash and other property from the business "on a tax-favored basis." *Id.* The transaction takes place in two steps: A small or closely held business transfers funds to a trust; that trust then pays the

premium on the business owner's cash-value life insurance policy. Cash-value policies function differently from "term" life insurance, which guarantees coverage for a specified period of time. Under a term policy, the insurer pays out the so-called death benefit only if the policyholder dies during the coverage period. In contrast, with a cash-value policy, a portion of the premium goes into an investment account. The policyholder controls how the funds are invested, and when the plan terminates, the policyholder can withdraw the cash value that has accumulated within the policy, called the surrender value. *Id.*

The IRS required disclosure of these transactions given their potential for use in tax-avoidance schemes. In the typical arrangement, the business deducts its contributions to the trust, thereby reducing its taxable income. But the business owner does not include the payments as part of his own taxable income; at most, he reports "significantly less than the premiums paid on the cash value life insurance policies." *Id.* In effect, the business owner shifts the pre-tax earnings of the business into his own personal investment vehicle. Even when a death benefit is provided—such that there is a component of term life insurance grafted onto the transaction—"the arrangements often require large employer contributions relative to the actual cost of the benefits currently provided under the plan." *Id.* Thus, the IRS explained, the transfers to the trust could be, in substance, distributions of dividend income or deferrals of compensation. *Id.* at 960–61. Upon disclosure of the transaction, the IRS could challenge the deductions by the business and seek to include the payments made to the trust in the business owner's gross income.

Notice 2007-83 states that the listed transaction described above consists of four elements. Simplified

somewhat, and as relevant for our purposes, the four elements are:

- the transaction involved "a trust or other fund described in [26 U.S.C.] § 419(e)(3) that is purportedly a welfare benefit fund";

- contributions to the trust or other fund were not governed by the terms of a collective bargaining agreement;

- the trust or other fund paid premiums on one or more cash-value life insurance policies that accumulated value; and

- the employer took a deduction that exceeded the sum of certain amounts.

*Id*. at 961–62.

The Notice also identifies as a listed transaction "any transaction that is substantially similar" to a transaction with the four specified elements. *Id.* at 961. Although the term "substantially similar" appears in the penalty-imposing statute, 26 U.S.C. § 6707A, the statute does not define the term. The IRS has defined it in Treasury Regulation § 1.6011-4. (Interior Glass does not challenge the validity of the regulation here.) That definition states in relevant part:

> The term substantially similar includes any transaction that is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy. . . . [T]he term

> substantially similar must be broadly construed in favor of disclosure. For example, a transaction may be substantially similar to a listed transaction even though it involves different entities or uses different Internal Revenue Code provisions.

26 C.F.R. § 1.6011-4(c)(4). The regulation includes two examples by way of illustration. In the first, the taxpayer inflates the basis in a partnership interest in a different manner from the listed transaction; in the second, the taxpayer employs an intermediary of a different type from that used in the listed transaction to prevent recognition of a gain. § 1.6011-4(c)(4), Examples 1 & 2. Both transactions remain substantially similar despite the change in form. As is often the case elsewhere in tax law, the disclosure obligation does not "exalt artifice above reality," which would "deprive the statutory provision in question of all serious purpose." *Gregory v. Helvering*, 293 U.S. 465, 470 (1935).

The IRS concluded that Interior Glass participated in a transaction substantially similar to the listed transaction identified in Notice 2007-83 during the 2009, 2010, and 2011 tax years. Specifically, Interior Glass joined the Group Term Life Insurance Plan (GTLP) to fund a cash-value life insurance policy owned by its sole shareholder and only employee, Michael Yates. All agree that this transaction satisfies three of the Notice's four elements. The GTLP transaction lacks the first element because its intermediary was a tax-exempt business league, rather than a trust or § 419(e)(3) welfare benefit fund. The business league, however, performed the same functions as the trust or welfare benefit fund described in the Notice.

We agree with the district court that Interior Glass was required to disclose its participation in the GTLP transaction. Under the definition contained in the applicable Treasury Regulation, the GTLP transaction is substantially similar to the listed transaction identified in Notice 2007-83.

First, the GTLP transaction was "expected to obtain the same or similar types of tax consequences." 26 C.F.R. § 1.6011-4(c)(4). The transaction identified in the Notice seeks to "provide cash and other property to the owners of the business on a tax-favored basis." 2007-2 C.B. at 960. Those favorable tax consequences are achieved through (1) a deduction of the contributions by the business and (2) a failure by the business owner to declare the payments as income. The GTLP transaction promised similar tax benefits. On that score, the plan documents represented that "[c]ontributions [were] currently deductible" by Interior Glass and that only the cost of group-term life insurance (in contrast to the premium on the cash-value policy) may have been includible in Yates' income.

Second, the GTLP transaction is both "factually similar" to the listed transaction described in the Notice and "based on the same or similar tax strategy." 26 C.F.R. § 1.6011-4(c)(4). As to factual similarity, the GTLP transaction involved a small business, a cash-value life insurance policy that benefits the business owner, and payment of the premiums on the policy through an intermediary. The GTLP combined those three aspects in pursuit of the same tax strategy discussed in the Notice. By using the intermediary, the business and its owner attempted to do what they could not do outright: deduct payments made to the owner's investment vehicle without declaring the benefits as income.

Interior Glass identifies two differences between the GTLP transaction and the listed transaction in Notice 2007-83, but neither difference is material. First, as noted above, the GTLP transaction was filtered through a tax-exempt business league instead of a trust or welfare benefit fund. Second, rather than invoking 26 U.S.C. § 419's rules for welfare benefits, the GTLP transaction purported to provide § 79 group-term life insurance benefits, even though it also involved a cash-value life insurance policy. But the IRS's definition of "substantially similar" explicitly states that neither of these differences is sufficient to prevent a transaction from qualifying as a listed transaction: "[A] transaction may be substantially similar to a listed transaction even though it involves different entities or uses different Internal Revenue Code provisions." 26 C.F.R. § 1.6011-4(c)(4). Just as in the examples accompanying the regulation, Interior Glass cannot evade a finding of substantial similarity solely by claiming a deduction on a different basis or by using a different intermediary to complete the transaction.

Interior Glass contends that, if read to encompass the GTLP transaction, the definition of "substantially similar" is unconstitutionally vague. That contention is without merit. For a civil penalty like 26 U.S.C. § 6707A, the definition is constitutionally valid so long as "a person of ordinary intelligence" could determine which transactions are substantially similar to the listed transaction identified in Notice 2007-83. *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015). As explained above, the regulation's definition of "substantially similar" is detailed enough to make that determination an easy one in this case. The only differences between the GTLP transaction and the listed transaction are expressly addressed—and expressly rejected as immaterial—in the definition itself.

II

We also find no merit in Interior Glass' contention that its procedural due process rights were violated.

To obtain judicial review of the penalties imposed by the IRS, Interior Glass first had to pay the penalties in full. *See* 28 U.S.C. § 1346(a)(1); *Flora v. United States*, 362 U.S. 145, 177 (1960). Interior Glass argues that, under the Due Process Clause of the Fifth Amendment, it should have been afforded an opportunity to obtain judicial review before having to part with its money. Neither the Supreme Court's nor our court's precedent supports that proposition.

As a general rule, the government may require a taxpayer who disputes his tax liability to pay upfront before seeking judicial review. Being compelled to part with one's money constitutes a deprivation of property, but the government's vital interest in securing tax revenues justifies a pay-first, litigate-later scheme of judicial review. *Phillips v. Commissioner*, 283 U.S. 589, 595, 597–98 (1931); *Franceschi v. Yee*, 887 F.3d 927, 936 (9th Cir. 2018). Under that rule, Interior Glass' ability to obtain post-collection judicial review would suffice, without more, to satisfy due process.

In *Jolly v. United States*, 764 F.2d 642 (9th Cir. 1985), however, we applied the three-factor framework from *Mathews v. Eldridge*, 424 U.S. 319 (1976), when deciding whether a taxpayer was entitled to pre-collection judicial review of a tax penalty. Applying that framework here, we conclude that Interior Glass was not entitled to pre-collection judicial review. *See Larson v. United States*, 888 F.3d 578, 585–87 (2d Cir. 2018) (upholding full-payment rule for related tax penalty).

The first factor is "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. Interior Glass' interest in the lost use of its property for the pendency of the refund action is "noteworthy, but not that substantial." *Jolly*, 764 F.2d at 645. After all, post-deprivation proceedings will provide "full retroactive relief" if the taxpayer prevails on its refund suit. *Mathews*, 424 U.S. at 340. Interior Glass would no doubt prefer to retain its money while litigating the validity of the penalties, but this is not a case in which an individual faces abject poverty in the interim. *See Goldberg v. Kelly*, 397 U.S. 254, 264 (1970).

The second factor is "the risk of an erroneous deprivation" of the private interest. *Mathews*, 424 U.S. at 335. The IRS's listed-transaction determination turns on a side-by-side comparison of the listed transaction identified in an IRS notice or regulation and the transaction at issue. The decision to impose a penalty under 26 U.S.C. § 6707A "does not require any determinations of credibility of witnesses or claims, and would not be aided in most cases by a face-to-face meeting with the taxpayer before a penalty is assessed." *Jolly*, 764 F.2d at 646. The IRS is therefore unlikely to err in "the generality of cases," which is the proper focus for our analysis. *Mathews*, 424 U.S. at 344.

The risk of an erroneous deprivation is further mitigated by the availability of pre-collection review of the taxpayer's liability in an administrative forum. *See Larson*, 888 F.3d at 586. Taxpayers have two (likely mutually exclusive) routes to obtain review in the IRS Office of Appeals: an appeals conference or a collection-due-process hearing. 26 U.S.C. § 6330(c)(2)(B); 26 C.F.R. § 601.103(c)(1); *see Lewis v. Commissioner*, 128 T.C. 48, 59–60 (2007). If the taxpayer files a timely protest, an appeals officer will review

the taxpayer's arguments and determine whether the taxpayer engaged in a listed transaction. *See, e.g.*, *Our Country Home Enterprises, Inc. v. Commissioner*, 855 F.3d 773, 781 (7th Cir. 2017). Although the IRS Office of Appeals may not rescind a listed-transaction penalty, *see* 26 U.S.C. § 6707A(d)(1)(A), that simply precludes the Office from exercising prosecutorial discretion in deciding whether the penalty should stand. *See* 26 C.F.R. § 301.6707A-1(d)(3)–(5). The Office can still determine whether the penalty was erroneously imposed in the first place and, if so, revoke the penalty altogether. *See* § 601.106(f)(1).

Finally, the third factor, which measures the government's interest in retaining the full-payment prerequisite to this refund action, also weighs in the IRS's favor. *See Mathews*, 424 U.S. at 335. Even with the disclosure obligation on the books, "the IRS often did not learn of the existence of tax shelters until after it conducted audits." *Smith v. Commissioner*, 133 T.C. 424, 427 (2009). Congress added the § 6707A penalty provision in 2004 to encourage voluntary disclosure of listed transactions. This important objective "could be jeopardized if full-scale pre-deprivation hearings and court cases are required whenever the government attempts to collect" the authorized penalties. *Jolly*, 764 F.2d at 646; *see Larson*, 888 F.3d at 586–87.

In sum, the combination of pre-collection administrative review plus post-collection judicial review satisfies the requirements of the Due Process Clause. Interior Glass received all the process it was due in this context.

**AFFIRMED.**